## HOYT v. COMMISSIONER OF INTERNAL REVENUE.

### No. 63.

Circuit Court of Appeals, Second Circuit.

Nov. 20, 1944.

Jesse Hoyt, of New York City, for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Robert N. Anderson, and S. Dee Hanson, Sp. Assts. to the Atty. Gen., for respondent.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

Whatever our own independent opinion might be, we cannot disturb a factual inference made by the Tax Court unless it is unreasonable. Accordingly we must here accept the Tax Court's finding which, in effect, is that the taxpayer, when she executed the guaranty, had no intention of ever asserting a claim against her daughter should taxpayer be compelled to pay the broker under the guaranty. For

we cannot say that such a finding as to taxpayer's intention cannot reasonably be inferred from these facts: The taxpayer knew that the probability was that her daughter could not pay any loss or deficit for which taxpayer might become liable because of the guaranty; the daughter had no assets of her own that she could deposit as additional collateral or any other assets out of which a judgment could be satisfied; the daughter was financially dependent upon the taxpayer; the margin for the debt due to the broker, when the guaranty was executed, was small.[2]

Shinman v. Commissioner, 2 Cir., 60 F.2d 65, is urged upon us by the taxpayer as compelling reversal here. But what we said in that case serves rather to sustain the Tax Court's decision. There the taxpayer guaranteed the brokerage account of a brother-in-law, so that the close family relationship we have in the instant case was there absent; moreover, there was no showing of dependence such as we have here, and no showing that, at the time when the guaranty was made, the brother-in-law (who was insolvent when the taxpayer was called upon to pay the broker under the guaranty) was not in such financial condition that there then was little probability that he could not repay any amount which taxpayer might later be called upon to pay the broker. In our decision in that case, we said (page 66 of 60 F.2d): "At least, the taxpayer, who has the burden, must show that it is not a gift, and this Shiman failed to do. No doubt a man may pay money for another's use, from which a promise to repay is normally inferred, without in fact meaning to create a debt. The relations of the parties may show that it was a gift, just as they may show that any expressions which ordinarily import a contract, are understod by both sides not to create one. New York Trust Co. v. Island Oil & Transport Corp., 2 Cir., 34 F.2d 655; Williston § 21. Indeed, if the putative lender knows that the borrower is without resources and likely never to have any, it may be reasonable with nothing further, to assume that he merely means to give the money. The conduct of neither party would in that case have its usual implication, and no contract would result." The facts of the instant case sufficiently resemble those of the Shiman case to render reasonable the Tax Court's finding here.

In American Cigar Co. v. Commissioner, 2 Cir., 66 F.2d 425, 427, we cited with approval the above quoted discussion in the Shiman case in support of our holding that notes taken on account of advances by a taxpayer who believes at that time that the notes are worthless and uncollectible cannot be deducted as bad debts because they are in the nature of gifts. See also W. F. Young, Inc. v. Commissioner, 1 Cir., 120 F.2d 159, 164-166; cf. 5 Mertens, Federal Income Taxation, §§ 28.46, 30.09.

Affirmed.

---

[2] The smallness of the margin was doubtless the reason the broker asked for the guaranty.